

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
KATHLEEN M. EWALD,

               Plaintiff,

     -against-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. CV-05-4583 (FB)

*Appearances:*
*For the Plaintiff:*
CHARLES E. BINDER, ESQ.
Binder and Binder
215 Park Avenue South, 6th Floor
New York, NY 10003

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: STEVEN M. WARSHAWSKY, ESQ.
Assistant United States Attorney
147 Pierrepont Plaza
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

        Plaintiff Kathleen M. Ewald ("Ewald"), a former writer who claims that she is disabled due to her inhalation of toxic fumes following the World Trade Center collapse, seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). Ewald moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated during oral argument on November 8, 2006, and further set forth herein, the matter is remanded for further proceedings.

I.

The Commissioner concedes that remand is necessary, but solely to have a vocational expert consider how Ewald's nonexertional limitations affect her ability to work in the national economy. Ewald argues that remand is warranted solely for the purpose of calculating benefits; specifically, that the record reflects, due to a combination of neurocognitive and physical impairments, that she has been disabled since March 22, 2002, and that the ALJ improperly evaluated the medical evidence.

II.

To determine whether an individual is entitled to DIB, the Commissioner employs a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *see also Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999). One component of this analysis is proper application of the treating physician rule. *See id.* § 404.1527; *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). ("A treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.")

The Commissioner ruled in favor of Ewald at step one. At step two, the ALJ found that several of Ewald's alleged impairments – restrictive airways disease, depression and anxiety – "are considered severe." A.R. at 22; *see id.* § 404.1520(c) (at step two, the Commissioner determines whether claimant has "severe impairments" that limit her ability to do work-related activities). The ALJ determined that Ewald's other alleged

impairments – i.e., neuropathy, short-term memory loss, concentration problems– were unsubstantiated by the medical records. *See id.* In making these findings, the ALJ rejected the opinion of Ewald's treating physician Dr. Mazlen, who had determined that "[t]he combination of both the physical disorders and the neurologic and neuropsychiatric problems that have resulted from the incident on 9/11 have caused her to be incapacitated in terms of employment." A.R. at 212. Specifically, Dr. Malzen diagnosed Ewald with "reactive small airways disease, bilateral pleurisy, paresthesias of the limbs, asthma, myoconus, vertigo, headaches, fatigue, photophobia, active Epstein Barr virus, cervical adenopathy, chlamydia pneumonia uri, hyperadrenalism, neurocognitive dysfunction, pulmonary diffusion defect, peripheral neuropathy, WTC cough, toxic encephalopathy, and constochronritis." A.R. 202.

Dr. Malzen's opinion was entitled to controlling weight if it was supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence. *See id.* § 404.1527(d)(2); *Green-Younger*, 335 F.3d at 106 (2d Cir. 2003). By rejecting his opinion, the ALJ misapplied the treating physician rule in several ways.

First, the ALJ's determination that Dr. Malzen "gives no objective evidence to support his draconian number of impairments other than pleural friction rubs, chest wall tenderness and positive EBV Capsid and Chlamydia testing," A.R. at 19, is contradicted by the record; Dr. Malzen specifically relied on his personal examinations of Ewald, laboratory tests, and the neuropsychiatric evaluations of consultative psychologists Drs. Preston and

Singer.

Second, the ALJ was wrong to discount the corroborative opinions of Drs. Preston and Singer; contrary to the ALJ's findings, their reports are based on objective medical evidence, i.e., brain function tests and a toxicology study, respectively. Also, the ALJ misunderstood Dr. Preston's findings that Ewald is "30-35% physically disabled and 10% cognitively disabled," concluding that they were inconsistent with Dr. Preston's opinion that Ewald is completely disabled. A review of Dr. Preston's report reflects that the percentages were arranged from 0 to 100, with 0 being the most severe. Thus, when Preston's found Ewald "10% cognitively disabled," this was a severe diagnosis; this diagnosis was defined in her report as, "severe symptoms at rest; bed ridden the majority of the time. No travel outside the house. Marked cognitive symptoms preventing concentration." A.R. at 73.

Further, although the records from Cabrini Medical Center and Long Island Hospital do not reflect that Ewald suffers from neuropathy, short-term memory loss, concentration problems, and fatigue, they are not, as the ALJ claims, inconsistent with Dr. Malzen's opinion. *See Rosa v. Callahan*, 168 F.3d 72, 81 (2d Cir. 1999) (an ALJ may not rely on other physicians' omissions as primary evidence supporting its denial of benefits) (*Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 643 (2d Cir. 1983) (reversing because ALJ's decision rejected a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings).

Moreover, even if correct evaluation of the medical records revealed

inadequate support for Dr. Malzen's opinion, the ALJ's duty was to recontact Dr. Malzen, *see id.* § 404.1512(e), to fully develop the record. *See id.* § 404.1593; *see also Shall v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("even if the clinical findings were inadequate, it [is] the ALJ's duty to seek additional information from the treating physician *sua sponte*").

Accordingly, remand is necessary for proper application of the treating physician rule. See *Shall*, 134 F.3d at 505 (remand was appropriate course of action where the ALJ failed to provide a statement of valid reasons for not crediting the opinion of plaintiff's treating physician).

### III.

On remand, one of two scenarios will occur. The first is that, upon reviewing all the evidence and/or further developing the record, the ALJ will determine that one or more of Ewald's impairments meets or equals a Listed Impairment. *See* § 404.1520(e). Ewald would then be found *per se* disabled at step three and Ewald would be entitled to DIB. *Williams*, 204 F.3d at 49 (2d Cir. 1999) ("[I]f an individual is found to be disabled (or not) at any step, the Commissioner is not required to proceed to the next step."). As there is evidence in the record to support that Ewald suffers from several neurocognitive impairments, the Court trusts that the ALJ will expressly consider whether any of these impairments have a *per se* disabling affect on Ewald under Medical Listing 12.02 (Organic Medical Disorders). *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (where a claim is premised upon one or more listed impairments of Appendix 1, the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed

impairment).

The second possibility is that the ALJ will again find that none of Ewald's impairments meets any of the Medical Listings. Then, as the ALJ has already determined that Ewald cannot perform her past work as a writer, a vocational expert will have to testify regarding how Ewald's nonexertional limitations affect her ability to perform alternate work in the national economy. *See Rosa*, 168 F.3d at 82 ("Where significant nonexertional impairments are present at the fifth step in the disability analysis, the Commissioner "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform"); *see also Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (remand is proper where the ALJ improperly relies on the medical grids where testimony of a vocational expert is essential to denying benefits), *amended on other grounds*, 416 F.3d 101 (2d Cir.2005). Only if the Commissioner proves that Ewald's impairments do not prevent her from doing alternate work, can the Commissioner deny DIB. *See* § 404.1520(f); *see also Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) ("The claimant generally bears the burden of proving that she is disabled under the statute, but if the claimant shows that her impairment renders her unable to perform her past work, the burden then shifts to the Commissioner to show there is other gainful work in the national economy which the claimant could perform.").

## CONCLUSION

For the foregoing reasons, the case is remanded to the Commissioner for further proceedings in accordance with this Memorandum. As discussed with the parties during oral argument, any further proceedings will be conducted before a different ALJ, and in light of the protracted history of this case, the proceedings will be completed within 120 days of issuance of this Order; if not, a calculation of benefits owed Ewald must be made immediately. *See Butts v. Barnhart,* 416 F.3d 101, 106 (2d Cir. 2005).

**SO ORDERED.**

                                            /signed/
                                      FREDERIC BLOCK
                                    Senior United States District Judge

Brooklyn, New York
November 9, 2006